United States District Court
District of Massachusetts

```
_____
                            )
United States of America    )
                            )
          v.                )    Criminal Action No.
                            )    18-10468-NMG
Jermaine Gonsalves,         )
                            )
          Defendant.        )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant Jermaine Gonsalves ("Gonsalves" or "defendant") has been charged, alongside several other individuals, with conspiring to possess with intent to distribute and to distribute fentanyl and cocaine. Pending before this Court is Gonsalves' motion to suppress evidence obtained from a search of an apartment and basement at 40 Vine Street in Brockton, Massachusetts or, in the alternative, for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). For the reasons that follow, that motion will be denied.

I.   **Background**

In 2018, the Drug Enforcement Administration ("DEA"), the Department of Homeland Security, Homeland Security Investigations, the Massachusetts State Police ("MSP") and the Brockton Police Department began an investigation into a suspected drug trafficking organization ("DTO") led by Djuna

- 1 -

Goncalves and based in Brockton, Massachusetts.  Because of the
confusing similarity in the names of the leader of the DTO and
this defendant, the former will hereinafter be referred to as
"Djuna".

Throughout 2018, agents used a variety of investigative
methods and tools to gather evidence against Djuna and other
members of the DTO including Gonsalves.  Between May and August,
2018, agents employed a confidential informant to make
controlled purchases of fentanyl from Djuna.  Two stationary
pole cameras were installed in the vicinity of Djuna's residence
at 12 Addison Avenue in Brockton for surveillance purposes.  In
September and October, 2018, United States Magistrate Judge
Marianne B. Bowler issued orders authorizing the interception of
wire and electronic communications to and from a cell phone used
by Djuna.

In October, 2018, MSP Trooper and DEA Task Force Officer
Jason Abramoski ("Trooper Abramoski") executed an affidavit
describing the results of the months-long investigation into the
drug trafficking activities of Djuna and his associates.  On the
basis of that affidavit, Magistrate Judge Bowler issued a
criminal complaint ("Complaint") charging eight individuals
including Djuna and Gonsalves with conspiring to possess with
intent to distribute and to distribute fentanyl and cocaine.

**A. Investigation Concerning Gonsalves**

On October 31, 2018, the government applied for and obtained a warrant to search Apartment 1 at 40 Vine Street in Brockton ("October Warrant").  Trooper Abramoski signed an affidavit in support of the warrant application which incorporated his prior affidavit in support of the Complaint.

In his affidavits, Trooper Abramoski described two occasions in which Gonsalves allegedly participated in the drug trafficking conspiracy led by Djuna.

First, on September 18, 2018, agents intercepted communications between Djuna and a drug supplier during which Djuna ordered a quantity of fentanyl.  Agents observed Gonsalves pick up Djuna from his residence at 12 Addison Avenue in a rented vehicle.  After joining Djuna, Gonsalves briefly stopped at his residence at 40 Vine Street before continuing to the Dorchester neighborhood of Boston, where agents observed Gonsalves and Djuna meet with two men at a restaurant.

Minutes later, agents observed Gonsalves and Djuna return to the rental car, each carrying white plastic bags.  Agents followed the car to a location in Boston.  Although agents apparently had not seen the suspected drug supplier get in the car, they observed him getting out of the car carrying a plastic bag.  Gonsalves and Djuna were later seen returning to 12

Addison Avenue, where agents observed Djuna enter his residence carrying a plastic bag.

Second, on October 17, 2018, agents intercepted communications between Djuna and two drug customers, "Buyer 1" and "Buyer 3," during which the customers arranged to buy fentanyl and cocaine from Djuna.  Utilizing pole cameras, agents observed Gonsalves and co-defendant Carlos Antunes pick up Djuna from his residence in the same rental car as the one used for the September transaction.  After meeting with Buyer 3, the three men drove to the residence of Buyer 1, where agents observed Buyer 1 engage in a brief exchange with Djuna. Gonsalves and the others subsequently returned to 12 Addison Avenue.

Trooper Abramoski also outlined Gonsalves' criminal history, including a 2011 conviction for distribution of cocaine base and several other crimes unrelated to drug trafficking.  He attested to the fact that 40 Vine Street had been connected to the Gonsalves family for years and that agents had observed Gonsalves entering and leaving the premises on several occasions.  Finally, Trooper Abramoski recounted his experience investigating drug traffickers and described the kinds of items commonly found at their residences.

**B. Execution of the Warrants**

The October Warrant authorized law enforcement to search Apartment 1 at 40 Vine Street in Brockton, which was identified as Gonsalves' residence, as well as the residence of Antunes at 125 Maplewood Circle.  Agents were permitted to seize 1) documents and records relating to drug distribution and money laundering, 2) money and other items of value relating to drug trafficking, 3) documents and personal property relating to property ownership or control, 4) photographs of items relevant to the drug conspiracy charge and 5) personal electronic devices.

On November 1, 2018, agents executing the October Warrant encountered Jose Rodrigues, Gonsalves' cousin, in Apartment 1 and were informed that Gonsalves lived on the second floor of the building and had exclusive access to the basement.  Daniel Vicente, who resided on the third floor, confirmed that Gonsalves lived on the second floor and acted as the property manager for the building.

Agents entered and secured the second floor apartment while Trooper Abramoski executed an affidavit in support of a new warrant application which incorporated the two prior affidavits (collectively, "the Affidavits").  Magistrate Judge Bowler issued a new search warrant ("November Warrant") authorizing

agents to seize the same items as those described in the October Warrant from Apartment 2 of 40 Vine Street.

While executing the November Warrant, agents seized a digital scale, a finger-sized drug press and Suboxone strips from the kitchen of the apartment. The Subozone strips were found in a folded camping chair. Agents also seized a bag of powder cocaine, a pistol light, ammunition and mail addressed to Gonsalves from the two bedrooms in the apartment. Finally, agents seized a 9mm Ruger pistol and a loaded magazine which were found in a sock under the basement stairs.

### C. Gonsalves' Challenge to the Warrant and its Execution

In September, 2020, Gonsalves filed his motion to suppress the evidence seized from his residence or, in the alternative, for a <u>Franks</u> hearing. The government has opposed the motion.

Gonsalves asserts that, in procuring and executing the search warrants, the government 1) failed to establish a nexus between the illegal activity and the place searched which is necessary to a finding of probable cause, 2) made false statements and recklessly omitted key information in the Affidavits and 3) exceeded the scope of the search authorized by the November Warrant. He also requests a <u>Franks</u> hearing in the event that the Court concludes that the Affidavits established probable cause to search his residence.

## II.  **Discussion**

### A. **Probable Cause for the Warrant**

A sworn affidavit filed in support of a search warrant is entitled to a presumption of validity. See United States v. Rigaud, 684 F.3d 169, 173 (1st Cir. 2012); see also Illinois v. Gates, 462 U.S. 213, 234 (1983) ("[C]ourts should not invalidate . . . warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." (brackets in original) (internal citation omitted)).  A magistrate judge is entitled to deference as to her finding of probable cause and the decision to issue a search warrant should be reversed only if there is "no substantial basis . . . for concluding that probable cause existed." United States v. Dixon, 787 F.3d 55, 58-59 (1st Cir. 2015) (internal citation omitted).

Probable cause exists when, based upon the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238.  A warrant application must demonstrate probable cause to believe that

> (1) a crime has been committed -- the "commission" element, and (2) enumerated evidence of the offense will be found at the place searched -- the so-called "nexus" element.

United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999).

Gonsalves acknowledges that the Affidavits establish probable cause to believe that a crime was committed and contends only that the Affidavits failed to establish a nexus between his residence and the criminal activity.  Specifically, he submits that Trooper Abramoski's generalized observations of his experience with drug traffickers are insufficient to establish probable cause and that the minor role played by Gonsalves in the DTO cannot support an inference that evidence would be found in his residence.

Although generalized observations based upon a law enforcement officer's training and experience alone are insufficient to establish such a nexus, such observations "contribute significantly to the probable-cause determination" when accompanied by specific observations connecting the residence to drug transactions. United States v. Ribeiro, 397 F.3d 43, 50-51 (1st Cir. 2005).  Indeed, the First Circuit Court of Appeals has repeatedly

> endorsed the concept that a law enforcement officer's training and experience may yield insights that support a probable cause determination.

United States v. Floyd, 740 F.3d 22, 35 (1st Cir. 2014).

Here, the Affidavits contain both generalized observations and specific information linking defendant's residence with his drug trafficking activity.  Trooper Abramoski attested that

individuals engaged in drug trafficking often store records of and proceeds from drug transactions, among other relevant evidence, in their residences.  The Affidavits explain that agents had observed Gonsalves entering and leaving 40 Vine Street on numerous occasions and interviewed neighbors who informed them that he lived at the premises searched.  The Affidavits also describe recent drug transactions in which Gonsalves participated, including one instance in which he made a stop at his residence with Djuna prior to their meeting with Djuna's fentanyl supplier.

Those facts give rise to a fair probability that evidence of drug trafficking would be found at the Gonsalves residence. Accordingly, this Court sees no substantial basis upon which the magistrate judge's determination of probable cause should be overturned.  In fact, a finding of probable cause here comports with recent decisions in this Circuit. See, e.g., United States v. Galloway, No. 19-10162, 2020 U.S. Dist. LEXIS 134926, at *8-9 (D. Mass. July 30, 2020) (finding a sufficient nexus based upon information that defendant was involved in drug trafficking, observations of the defendant at his residence and the affiant's knowledge that drug traffickers often store drugs and money in their residences).

## B. The <u>Leon</u> Good Faith Exception

Even if the Affidavits did not support probable cause to believe that evidence of drug trafficking would be found in Gonsalves' residence, the items seized would be admissible under the good faith exception to the Fourth Amendment exclusionary rule announced in <u>United States</u> v. <u>Leon</u>, 468 U.S. 897 (1984).

In <u>Leon</u>, the United States Supreme Court held that evidence obtained pursuant to a warrant subsequently found to be invalid remains admissible if law enforcement officers acted in good faith and with objectively reasonable reliance on the warrant. <u>See</u> <u>Leon</u>, 468 U.S. at 922-23.  Suppression is appropriate only if 1) the affiant deliberately or recklessly misled the magistrate judge, 2) the magistrate judge "wholly abandoned" her judicial role in issuing the warrant, 3) the supporting affidavit was "so lacking in indicia of probable cause" that reliance upon it was unreasonable or 4) the warrant was so facially deficient that agents could not reasonably presume its validity. <u>Id.</u> at 923.

Defendant asserts that the first three exceptions to <u>Leon</u> apply to the warrants at issue.  To the extent that Gonsalves contends that the <u>Leon</u> exception is inapplicable because the Affidavits failed to show a nexus between his residence and criminal activity, the Court has already determined that such a

nexus has been established.  The Affidavits detailed defendant's ties to drug dealing and the residence at 40 Vine Street and described one instance in which Gonsalves stopped at his residence on his way to a drug transaction.  The Affidavits were not, therefore, "so lacking in indicia of probable cause" that it would be unreasonable for agents to rely on the warrant or that the magistrate judge wholly abandoned her neutral role in authorizing it.

Defendant also submits that Trooper Abramoski recklessly misled the magistrate judge by omitting information indicating that the two-month wiretap of Djuna's phone did not reveal any communications between Djuna and Gonsalves concerning drugs. That omission neither renders the Leon exception inapplicable nor the warrants invalid.  As the government notes, the absence of any reference to intercepted communications between Gonsalves and Djuna implies that agents had not discovered drug-related exchanges involving defendant and, therefore, the omission was not misleading.  Furthermore, an explicit statement noting that the wiretap of Djuna's phone had not incriminated Gonsalves would not have negated the other evidence detailed in the Affidavits with respect to the participation of defendant in drug trafficking activities and his connection to the residence at 40 Vine Street.

## C. Scope of the Search

In addition to challenging the sufficiency of the Affidavits and the validity of the warrants, Gonsalves submits that executing agents unlawfully exceeded the scope of the November Warrant.  He asserts that the government used its authorization to search for records and proceeds as a pretext to locate drugs and weapons for which it lacked probable cause to search.  According to Gonsalves, the Suboxone strips, gun and ammunition that were seized should be suppressed.

Defendant's contention is to no avail.  It is well-established that the underlying motivation or expectation of officers executing a search warrant is irrelevant in determining whether a search exceeded the scope of the warrant. See Ribeiro, 397 F.3d at 52 ("As long as the search was within the scope of the warrant, it is no matter that the officers may have hoped to find drugs."); see also Horton v. California, 496 U.S. 128, 138 (1990) ("The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement.").  Executing officers generally may search

> any container situated within residential premises which
> are [sic] the subject of a validly-issued warrant . . . if

it is reasonable to believe that the container could
conceal items of the kind portrayed in the warrant.

United States v. Crooker, 688 F.3d 1, 8 (1st Cir. 2012)
(internal citation omitted).

The November Warrant authorized the seizure of, inter alia,
cash and certain kinds of paper documents.  It would be
reasonable for agents to believe that those items would be
hidden in the locations where the evidence was found that
Gonsalves now seeks to suppress. See United States v. Romo-
Corrales, 592 F.3d 915, 920 (8th Cir. 2010) ("[P]aper documents
can obviously fit into small spaces and containers and,
therefore, could be hidden in numerous locations in a residence
. . . in the laundry hamper, garage, cooler, behind a mirror or
picture, behind a dresser, and underneath the bed."). Gonsalves
has not demonstrated that agents impermissibly exceeded the
scope of the warrant and, as a result, suppression of the seized
evidence will be denied.

### D. **Franks** Hearing

A Franks hearing is warranted only if a defendant makes
"substantial preliminary showings" that 1) a false statement or
omission in a warrant affidavit was made knowingly or with
reckless disregard for the truth and 2) the falsehood or
omission was necessary to the finding of probable cause. Rigaud,

684 F.3d at 173.  Although the omission of material information

may provide the basis for a <u>Franks</u> hearing,

> [t]he omission of a fact that does not cast doubt on the
> existence of probable cause is not a material
> misrepresentation.

<u>United States</u> v. <u>Fletcher</u>, No. 15-10393, 2017 U.S. Dist. LEXIS

191514, at *12 (D. Mass. Nov. 20, 2017).

Defendant asserts that he is entitled to a Franks hearing

because Trooper Abramoski failed to disclose that the wiretap of

Djuna's phone did not reveal any communications about drugs

between Djuna and Gonsalves.  The Court has already determined,

however, that such an omission is neither material nor necessary

to the finding of probable cause.  Accordingly, a <u>Franks</u> hearing

is not warranted.

**ORDER**

For the foregoing reasons, the motion of defendant Jermaine

Gonsalves to suppress evidence and for a <u>Franks</u> hearing (Docket

No. 544) is **DENIED.**


**So ordered.**

                                        /s/ Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge


Dated April 29, 2021