UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                  )      Cr. No. 18-10468-NMG<br>)<br>7.     JERMAINE GONSALVES,      )<br>       Defendant                         ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

On September 22, 2021, Jermaine GONSALVES pleaded guilty to Count One of a superseding indictment charging him with conspiracy to distribute and to possess with intent to distribute 100 grams or more of heroin, 400 grams or more of fentanyl, cocaine, cocaine base, oxycodone, and marijuana, in violation of 21 U.S.C. § 846. There is no plea agreement in this case.

In the final version of the Pre-Sentence Report ("PSR"), dated March 23, 2022, the United States Probation Office concluded that GONSALVES was a career offender within the meaning of Section 4B1.1 of the United States Sentencing Guidelines and determined that GONSALVES' guideline sentencing range ("GSR") was 262-327 months in prison. PSR, ¶¶ 29-36, 47, 88.

For reasons to be discussed in greater detail at GONSALVES' sentencing hearing, presently scheduled for April 11, 2022, the government requests that the Court impose a sentence of 210 months in prison and three years of supervised release, which is a 20% variance from the low end of GONSALVES' applicable guideline range. GONSALVES' criminal history, including a prior federal drug trafficking conviction, as well as his conduct in this case, support the imposition of a significant sentence.

## The Offense

In the fall of 2018, agents from Homeland Security Investigations ("HSI"), the Drug Enforcement Administration ("DEA"), the Massachusetts State Police, and the Brockton Police

Department commenced an investigation into a Brockton-based, gang-involved drug trafficking organization led by Djuna Goncalves. In the past ten years, Addison Avenue and the surrounding neighborhood have been the scene of two murders, numerous shots-fired calls, and other reports of crimes of violence. The home of Djuna and his brothers Cody and Tony Goncalves,[1] 12 Addison Avenue, was the epicenter of the violence in the neighborhood.

During the investigation, agents used physical surveillance, surveillance from a stationary pole camera, location information from various cellular telephones, and a Title III wiretap to intercept wire and electronic communications to and from Djuna's cellular telephone. The investigation revealed that Djuna worked with several other individuals, including GONSALVES, to distribute fentanyl, heroin, cocaine, cocaine base, and marijuana, often from Djuna's home at 12 Addison Avenue in Brockton.

Over the course of the investigation, agents identified GONSALVES as a member of the drug trafficking organization who drove Djuna to obtain additional fentanyl and drove Djuna to deliver fentanyl to customers. Interceptions from Djuna's phone also led agents to Djuna's Boston-based source of supply, Jose Perez Felix.

GONSALVES and Djuna Pick Up Fentanyl From Supplier. On September 18, 2018, agents intercepted a call between Djuna and Perez Felix, during which Djuna confirmed that he wanted Perez Felix supplied heroin and fentanyl ("one brown, and the China"). A short time later, agents observed GONSALVES pick up Djuna up at 12 Addison Avenue. As soon as GONSALVES arrived, Djuna exited 12 Addison Avenue, got into the front passenger seat of GONSALVES's rental car, and (after stopping briefly at GONSALVES's residence at 40 Vine Street in Brockton) the two men headed to Boston. As GONSALVES and Djuna were on their way to Boston, agents

---

[1] Hereinafter, Djuna, Cody, and Tony Goncalves will be referred to by their first names.

intercepted another call between Djuna and Perez Felix during which Perez Felix told Djuna he found someone who would sell an ounce of cocaine for $1,500 ("Yo somebody got one ounce for $1,500, too much"). Djuna and Perez Felix agreed that the price was too high for an ounce of cocaine (*Djuna:* "Damn, $1,500…Shit, the other boy don't have it?"), and they discussed how Perez Felix planned to go to New York to get cocaine at a better price (*Djuna*: "Yea, I told you, find people in New York, man get the (perico)"). Djuna told Perez Felix that he would meet him in ten to fifteen minutes.

Shortly before 5:40 p.m., GONSALVES and Djuna arrived at a restaurant in Boston and were met by Perez Felix. Less than five minutes later, GONSALVES and Djuna were observed walking out of the restaurant, each carrying a plastic bag. Agents saw their car proceed to Perez Felix's residence at Walton Street in Dorchester. Agents had not seen Perez Felix get into GONSALVES' car at the restaurant but saw him get of GONSALVES' car near his home. Agents saw Perez Felix walk from the car to 26 Walton, also carrying a plastic bag.  GONSALVES and Djuna drove off. Agents stayed with Perez Felix, who after a short time left his home and walked to a nearby barbershop, still carrying the bag. He stayed in the barbershop for one minute, left still carrying the bag, went to another store in the area, entered and exited in less than a minute, and—still carrying the bag—got into the passenger seat of a car and drove off.  Agents followed the car as Perez Felix headed on Route 93 south to Route 95 south, in the direction of New York (just as Perez Felix had told Djuna) before ceasing surveillance.

Using a pole camera at 12 Addison Avenue, agents determined that GONSALVES dropped Djuna off at 12 Addison Avenue shortly before 7 p.m. (an hour or so after they left the Boston restaurant with Perez Felix). When Djuna walked into 12 Addison Avenue, agents observed him carrying a plastic bag. From this, as well as the additional calls related to other deals between

3

Djuna and Perez Felix for 50 grams of fentanyl, agents believe that Djuna ordered a standard, 50 gram bag of fentanyl from Perez Felix. See PSR, ¶¶ 15-16.[2]

GONSALVES Drove Djuna to Deliver Fentanyl and Cocaine. On October 17, 2018, agents intercepted calls between Djuna and customers ordering 1-2 grams of fentanyl or fentanyl and cocaine. About ten minutes after customers placed orders with Djuna, GONSALVES arrived at Djuna's residence in the same rental car he used to drive Djuna to Boston to meet Perez Felix on September 18, 2018. GONSALVES was driving the vehicle and Carlos Antunes, Djuna's cousin and co-defendant, was in the front passenger seat. Once Djuna came out of his residence, Antunes moved to the back seat of GONSALVES' car and Djuna sat down in the front passenger seat. As GONSALVES drove Djuna and Antunes, agents intercepted a call between Djuna and the first customer, during which they made arrangements to meet. After the three met with the first customer, agents intercepted a call between Djuna and the second customer during which Djuna said he would be there in two-three minutes. Agents established surveillance in the area of the customer's residence and observed the customer walk to the front passenger side of GONSALVES' car. After approximately one minute, GONSALVES drove away and drove Djuna back to his residence. PSR, ¶¶ 17-19.

---

[2] As it did in the PSR, the government will argue at sentencing that the evidence was more than sufficient to conclude that this trip to Boston, like other trips, was for 50 grams of fentanyl, even if Djuna and Perez Felix did not expressly identify the quantity in their calls that day. See PSR, Government Objection 1. For the reasons set out in the PSR, the government believes that its view of the evidence – where Djuna traveled with GONSALVES from Brockton to Boston for a short meeting with Perez Felix the drug supplier before returning to Djuna's home and base of operations – supports the view that Djuna picked up a sizeable quantity of fentanyl from Perez Felix which, on other occasions, was determined to be 50 grams. Given the calls between Djuna and Perez Felix, the distance traveled, the brief nature of the meeting, and the fact that the meeting was repeated several weeks later for 50 grams, it is more likely than not that this first meeting, with GONSALVES, was also to pick up 50 grams of fentanyl.

4

Agents received additional information about GONSALVES, Djuna and Antunes from a cooperating witness (CW-1), who testified before a United States grand jury that he purchased fentanyl from Antunes on a regular basis. Beginning in 2017, CW-1 advised that it purchased 10 grams of fentanyl from Antunes approximately six times. After a period of picking up from other drug suppliers, CW-1 again returned to purchasing fentanyl from Antunes. CW-1 advised that in September and October 2018, CW-1 purchased 10 grams of fentanyl from Antunes two to three times a week. CW-1 identified a photograph of Antunes as "Carlos," his fentanyl supplier. CW-1 identified a photograph of Djuna Goncalves as "Juicy," someone who often accompanied Antunes when Antunes would deliver fentanyl to CW-1. Finally, CW-1 identified a photograph of GONSALVES as a third person who delivered fentanyl to CW-1 with Antunes.

The Brockton Arrests. On October 21, 2018, Djuna narrowly survived an assassination attempt at his home, when an as-yet unidentified assailant fired several times into Djuna's bedroom. Agents obtained a search warrant for 12 Addison Avenue and seized fentanyl, cocaine, crack cocaine, presses, packaging materials, cash, a firearm, ammunition clips and ammunition, an AK-47 assault rifle, and Djuna's cellular phone that agents had been intercepting.

In order to conclude the Brockton phase of the investigation and to minimize the possibility of retaliatory violence, the government charged ten individuals, including Djuna, Antunes, and GONSALVES. On November 1, 2018, agents proceeded to GONSALVES's residence at 40 Vine Street in Brockton with an arrest warrant as well as a search warrant for apartment 1, which was the apartment agents believed GONSALVES resided in. Once inside the apartment, agents spoke to GONSALVES' cousin, who was fully cooperative with agents. With the aid of a Brockton Police officer who spoke Cape Verdean creole, agents learned that GONSALVES actually resided in the apartment on the second floor. The cousin also explained that GONSALVES was the only

person who has access to the basement of 40 Vine Street and that GONSALVES would never allow anyone into that area of 40 Vine Street. After the cousin signed a written consent form, agents searched Apartment 1, found nothing of evidentiary value, and re-applied for a second search warrant to search apartment 2 and the basement. From GONSALVES' apartment 2, agents seized seven rounds of .40 caliber ammunition and approximately 43 suboxone strips, a digital scale, a pistol light, a bag of cutting agents, and photographs of GONSALVES with his children and mail in his name. From the stairs in the basement, agents seized a loaded 9 millimeter Luger semiautomatic pistol. GONSALVES was not at home and was arrested later that day.

## **Argument**

Much of GONSALVES' lengthy sentencing memorandum (Docket No. 1012), is spent making arguments that have been rejected by this Court in earlier co-defendant sentencings or which are not relevant to his particular circumstances. For instance, GONSALVES argues against Probation's view that he committed this offense while under a criminal justice sentence under USSG § 4A1.2, see Defendant's Sentencing Memo at pp. 4-10, which in turn leads GONSALVES to argue against a position recently endorsed by the Court at the sentencing hearing of co-defendant Edward Chapman, see Docket No. 986, citing United States v. Jones, 778 F.3d 375, 386 (1st Cir. 2015) (by pleading guilty to an indictment with a particular start date, "the defendant admitted that he was guilty of participating in the charged conspiracy as early as" the particular start date).

GONSALVES also argues against Probation's application of an enhancement for possessing a firearm in connection with his drug trafficking offense under USSG § 2D1.1(b)(1), see Defendant's Sentencing Memorandum at pp. 10-12. As is noted above and in Probation's response to GONSALVES's objection, it was GONSALVES' cousin who told agents that GONSALVES was the only party who had access to the basement where the loaded gun was found

6

and given GONSALVES' conduct with Djuna as well as the presence of additional narcotics, a drug press, a pistol light, a bag of cutting agents, and ammunition in his apartment, it was reasonable for Probation to conclude that he possessed the gun in connection with another felony offense. PSR, Probation Officer's Response to Objections 3 & 4.

The presence or absence of those enhancements do not drive GONSALVES' GSR. Here, it is GONSALVES' status as a career offender under USSG § 4B1.1 that drives his guideline range. PSR, § 88. A review of GONSALVES's career offender predicates illustrates the danger he has posed to Brockton and law enforcement for years. In 2009, Brockton Police officers responded to a call for a breaking and entering in progress. One of the suspects fled the house. Id., ¶ 42. As an officer ran after toward his police cruiser parked in the driveway to give chase, a Toyota rental car driven by GONSALVES drove backwards at a high rate of speed, struck the officer, knocked him into the grass, and crashed into the front of the police cruiser before coming to rest in a fence across the street. Id. As officers drew their service weapons, GONSALVES put the Toyota in drive. Id. As GONSALVES' Toyota started toward the officers, one officer backed his cruiser into GONSALVES's car, at which time GONSALVES got out of the Toyota and fled on food before he was ultimately placed under arrest. Id.

In 2011, GONSALVES was convicted in U.S. District Court in Boston of possession with intent to distribute cocaine base. Id., § 43. Agents had used confidential informants to make controlled purchases of cocaine base from GONSALVES. Id. On October 7, 2010, agents placed GONSALVES under arrest after he fled from authorities in his car with another individual who was wanted on murder charges (GONSALVES again crashed his car into a cruiser as he fled). Id. From the car, agents seized 35 grams of cocaine base from GONSALVES (additional drugs and a gun seized from the car were not attributable to GONSALVES). Id. Agents searched

7

GONSALVES' residence and seized an additional small quantity of cocaine base and $1,100 in cash. Id. While on supervised release, Probation concluded that GONSALVES violated the standard condition against associating with persons with felony convictions, including associating with Djuna Goncalves. Id.

It is true, as GONSALVES notes, that GONSALVES was not intercepted over the Djuna wiretap (though as the Court well knows, this investigation was truncated by the assassination attempt on Djuna). The simple fact is that after committing a serious federal drug trafficking offense, the last place GONSALVES should have been was 12 Addison Avenue and the last person he should have associated himself with was Djuna Goncalves. Nevertheless, GONSALVES drove Djuna to meet Perez Felix in Boston (in the government's view, to pick up a sizeable quantity of fentanyl), and GONSALVES drove Djuna to distribute fentanyl and cocaine to customers, all of which was confirmed through physical surveillance, intercepted communications, and testimony from a cooperating witness. When arrested, agents seized a loaded gun from the basement area GONSALVES controlled and seized additional narcotics, a drug press, a pistol light, a bag of cutting agents, and ammunition from his apartment.

GONSALVES' conduct here and prior criminal history militates in favor of the government's recommendation. This sentence is sufficient to serve general deterrence, specifically deter GONSALVES, promote respect for the law (in light of the fact that this is his second federal drug trafficking conviction), and protect the public. It is a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing. See 18 U.S.C. § 3553(a).

**Conclusion**

GONSALVES is a true career offender, not only as that term is defined by the Guidelines, but in the ordinary, everyday meaning of the phrase. The government requests that the Court sentence GONSALVES to 210 months in prison.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By: /s/ Christopher Pohl
Christopher Pohl
Alathea E. Porter
Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 8, 2022.

/s/ Christopher Pohl
Christopher Pohl
Assistant U.S. Attorney